# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DERRICK ANTON ROGERS
a/k/a Derrick Rogers
a/k/a Deonte Benson,

     **Defendant,**

EDWARD A. STONE,

     **Movant.**

CRIMINAL INDICTMENT
NO. 1:09-CR-441-TWT/AJB

## ORDER FOR SERVICE OF
## REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. CrR. 58.1(A)(3)(a)

and (b). Let the same be filed and a copy, with a copy of this order, be served upon

counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within **fourteen (14)** days of service of this Order.

Should objections be filed, they shall specify with particularity the alleged error(s)

made (including reference by page number to the transcript if applicable) and shall be

served upon the opposing party. *See United States v. Gaddy*, 894 F.2d 1307, 1315

(11th Cir. 1990).  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act, whether or not objections are actually filed.**  The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this  12th  day of ____April____, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DERRICK ANTON ROGERS                    CRIMINAL INDICTMENT
a/k/a Derrick Rogers                    NO.  1:09-CR-441-TWT/AJB
a/k/a Deonte Benson,

                **Defendant,**

EDWARD A. STONE,

                **Movant.**

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Currently before the Court are the following two motions filed by Edward A. Stone ("Mr. Stone" or "Movant"): "Motion for Return of Property," [Doc. 11]; and "Motion for Recognition of Crime Victim Status," [Doc. 13].  For the reasons set forth herein, the undersigned **RECOMMENDS** that Mr. Stone's motion for return of property, [Doc. 11], be **DENIED**, and that Mr. Stone's motion for recognition of crime victim status, [Doc. 13], be **DENIED**.

*Introduction*

Defendant Derrick Anton Rogers ("Rogers" or "the defendant") was charged in a single count indictment with possession of a firearm affecting commerce after having been convicted of a felony offense, in violation of 18 U.S.C. §§ 922(g) and 924(e). The indictment stated that Rogers was charged with being a felon in possession because he knowingly possessed two firearms: a Kel-Tec .380 caliber pistol (serial number HK203), and a H&K .45 caliber pistol (serial number 29-017194) (collectively "the firearms"). The indictment also sought forfeiture to the United States of the firearms and any ammunition involved in the commission of the offense pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461. [Doc. 1 at 1-2].

As the pre-trial criminal proceedings progressed in Rogers's case, a third party, Mr. Stone, raised questions concerning ownership and possession of the firearms through his two motions: the Motion for Return of Property, [Doc. 11]; and the Motion for Recognition of Crime Victim Status, [Doc. 13]. In the first motion, Mr. Stone claimed ownership of the firearms and sought their immediate return on various grounds. [Doc. 11 at 3-5]. In the second motion, Mr. Stone asserted that he is a crime victim pursuant to 18 U.S.C. § 3771(e) as a result of being the owner of the firearms with which the defendant is charged with having unlawfully possessed. [Doc. 13 at 3].

2

He further asserts that these firearms were stolen from him, although he cannot say if the defendant is the person who stole them. [*Id.*].

On December 23, 2009, the undersigned directed the government to respond to Mr. Stone's motions within fourteen days. [Doc. 22]. The government then filed responses to both motions on January 6, 2010, [Docs. 24-25], and Mr. Stone filed reply briefs on January 22, [Docs. 27-28]. At the defendant's January 27, 2010, pretrial conference, the undersigned, *inter alia*, entertained oral arguments concerning Mr. Stone's motions. [Docs. 31, 34 (hereinafter "T:__")]. With briefing completed and oral arguments presented, the undersigned turns to the merits of the Movant's motions.

### *Facts*[1]

Edward Stone declares that he possesses a valid Georgia firearms license. (Stone Decl. ¶ 14 in Doc. 11). He owns two firearms: a Kel-Tec .380 caliber pistol (serial number HK203); and a H&K .45 caliber pistol (serial number 29-017194). (*Id.* ¶ 3).[2] On May 2, these firearms were stolen from Stone's locked truck. (*Id.* ¶ 5).

---

[1]     These facts are derived from the documents filed in this case, the declarations attached to the briefs and representations made in the parties' briefs.

[2]     These firearms were purchased by Mr. Stone's wife - - Ann Marie Stone - - and given to Mr. Stone as a gift. (*See* Ann Marie Stone Decl. ¶¶ 3, 5 in Doc. 27).

3

AO 72A
(Rev.8/8
2)

On May 6, 2009, the defendant was arrested by the City of Atlanta police after the defendant was seen disposing of two firearms and the officers learned that he had a felony record. [*See* Doc. 2; *see also* DeGree Aff. ¶ 3 in Doc. 1]. The firearms that the defendant possessed were those that were stolen from Mr. Stone's truck, *i.e.*, a Kel-Tec .380 caliber pistol (serial number HK203), and a H&K .45 caliber pistol (serial number 29-017194). [*See* Doc. 2]. Mr. Stone learned this same day that the firearms had been recovered. (Stone Decl. ¶ 7).

Mr. Stone made arrangements with the Fulton County district attorney and an Atlanta police officer to retrieve his firearms. (*Id.* ¶ 8). Before Mr. Stone could retrieve the firearms, Special Agent Scott Oliver of the ATF took possession of the firearms on June 3, 2009. (*See id.* ¶ 9). Mr. Stone has unsuccessfully sought to regain possession of the firearms from the government after June 2009. (*See id.* ¶ 11; *see generally* Monroe Decl. in Doc. 27).

### Discussion

#### A.    Motion for Return of Property, [Doc. 11]

Mr. Stone argues that he is entitled to the return of the firearms pursuant to FED. R. CRIM. P. 41(g). First, the Movant argues that the government does not need to retain possession of the firearms during the pendency of the defendant's criminal case

4

because the firearms are of little help in establishing the crime. [Doc. 11 at 2]. Second, the Movant asserts that he will happily produce the firearms for any trial if the government decides to use them as evidence. [*Id.* at 3]. Third, Mr. Stone argues that the government's position that its retention of firearms for chain of custody purposes is unpersuasive because: (1) the quality of the property is not in question; (2) the firearms have serial numbers, thereby alleviating tampering concerns; and (3) the Atlanta police officer can testify to seizing the pistols from the defendant. [*Id.*]. Fourth, the Movant argues that his situation is analogous to the case of stolen vehicles, so his firearms should be returned just like the government returns stolen vehicles. [*Id.* at 4]. Fifth, Mr. Stone contends that he is being deprived of his property without due process. [*Id.*]. Sixth, the Movant argues that the government has unlawfully and unreasonably seized his firearms because the government holds them without a warrant. [*Id.*]. Finally, Mr. Stone complains about the length of time that it is taking to prosecute the defendant, noting the delay in first indicting the defendant and then in prosecuting him. [*Id.* at 4-5].

The government opposes the return of the Movant's firearms. First, the government argues that the Movant must seek return of the firearms through the forfeiture proceedings under 21 U.S.C. § 853 and FED. R. CRIM. P. 32.2. [Doc. 25 at

5

3-5]. Second, the government asserts that the procedures under § 853(n) should be followed in that there may be competing ownership interests in the firearms and that there is no evidence that the Movant owns the firearms.[3] [*Id.* at 5-6]. Third, the government argues that Mr. Stone's motion contravenes 21 U.S.C. § 853(k) because it is an attempt to intervene in the criminal case involving the forfeiture of the firearms. [*Id.* at 6-7]. Fourth, the government asserts that it has an interest in retaining the firearms as evidence in prosecuting the defendant. [*Id.* at 8]. Fifth, the government questions the timing of the Movant's motion by noting that the majority of cases addressing the issue of returning property have done so when such property was held by the government after the conclusion of a trial or appeal. [*Id.* at 8]. Finally, the government rejects the Movant's suggestion that he be permitted to retain custody of the firearms because: (1) Mr. Stone has not had success securing the firearms in the past; and (2) the government's possession will assure that the chain of custody is not broken. [*Id.* at 9].

---

[3] According to the government, an ATF trace of the firearms revealed that Anne Marie Stone, who may or may not be related to Mr. Stone, was the purchaser. [Doc. 25 at 5]. Mr. Stone's filings assert that Mrs. Stone is married to the Movant.

AO 72A
(Rev.8/8
2)

Mr. Stone raises the following arguments in his reply brief. First, he asserts that forfeiture is not the only mechanism of obtaining the firearms because FED. R. CRIM. P. 41(g) expressly authorizes his motion. [Doc. 27 at 5-6]. The Movant argues that Rule 41(g) applies because he is aggrieved due to both the unlawful seizure of his property and being deprived of his property. As for the unlawful seizure, the Movant contends that the ATF agent seized the firearms without a warrant and without exigent circumstances. [*Id.* at 6]. Second, Mr. Stone argues that he is the lawful owner of the firearms because his wife – Ann Stone – purchased the firearms and then gave them to the Movant as a gift. [*Id.* at 7-8]. Third, the Movant argues that his motion does not contravene § 853(k) because no trial has been calendared and no appeal filed. [*Id.* at 9]. Fourth, Mr. Stone argues that the government does not need the firearms because the forfeiture statute does not require the government to possess the firearms before they are forfeited. [*Id.* at 10]. Fifth, the Movant reasserts his position that the government has unlawfully seized the firearms given that they are being held without a warrant. [*Id.*]. Sixth, Mr. Stone contends that the government's retention of the firearms has become a *de facto* forfeiture given the delay in bringing and then prosecuting the defendant's case. [*Id.* at 11]. Seventh, the Movant contends that the government does not need the firearms for its case because federal circuit courts have

AO 72A
(Rev.8/8
2)

held on multiple occasions that the government does not need to produce the firearms at trial for a felon in possession case because testimony by law enforcement will suffice. [*Id.* at 12-15]. Eighth, Mr. Stone argues that the government's chain of custody argument is meritless because the firearms are not necessary and the rationale for the chain of custody does not apply. [*Id.* at 15-17]. Ninth, the Movant argues that his motion is timely. [*Id.* at 17-18]. Tenth, the Movant contends that the firearms are safer in his possession given the ATF's record of losing firearms. [*Id.* at 19]. Finally, Mr. Stone takes issue with the government's position that he may not cooperate in providing the firearms for trial because he has sworn in his declaration that he will cooperate. [*Id.* at 19-20].

The undersigned concludes that Mr. Stone's motion for return of property is barred at the present time. Assuming that FED. R. CRIM. P. 41(g) ordinarily is the appropriate provision for a third party seeking the return of property held by the government in a criminal case, the undersigned concludes that Rule 41(g) cannot provide Mr. Stone with the relief that he seeks in this case because the firearms at issue are subject to criminal forfeiture. Specifically, the government sought forfeiture of the firearms in the indictment pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461. [*See* Doc. 2]. Although § 924(d) states that the forfeiture provisions of the Internal

AO 72A
(Rev.8/8
2)

Revenue Code apply to the forfeiture of firearms,[4] § 2461 states that the forfeiture procedures of 21 U.S.C. § 853 apply to all stages of criminal forfeiture proceedings. 28 U.S.C. § 2461(c). Since the government seeks to forfeit the firearms under criminal forfeiture proceedings, the provisions of 21 U.S.C. § 853 apply. *See* 28 U.S.C. § 2461(c).

Because § 853 applies, the undersigned concludes that Mr. Stone's motion is barred at this time. As the government identifies, the provision that requires this result is § 853(k), which states:

> (k) Bar on intervention
>
> Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may--
>
> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k). Here, Mr. Stone's Rule 41(g) motion follows the indictment of the defendant, which contains a forfeiture provision for the firearms. [*Compare* Doc. 2

---

[4]      The forfeiture provisions are found at 26 U.S.C. §§ 7321 - 7328.

9

AO 72A
(Rev.8/8
2)

(October 2009 indictment) *with* Doc. 11 (December 2009 Rule 41(g) motion)]. To the extent that the motion constitutes an equitable proceeding, § 853(k) clearly bars the action because it was brought after the filing of the indictment alleging that the firearms were subject to forfeiture. *See id.* § 853(k)(2). To the extent that the motion is viewed as an attempt to intervene in the criminal proceedings,[5] it is barred because § 853(k) prohibits Mr. Stone, a third-party, from intervening in these criminal proceedings, which involve the forfeiture of the firearms. *See id.* § 853(k)(1).

As a result, the undersigned concludes that Mr. Stone cannot bring his Rule 41(g) motion for the return of the firearms because § 853(k) precludes his action. *See* 21 U.S.C. § 853(k); FED. R. CRIM. P. 32.2(b)(2) ("Determining whether a third party has [an interest in property] must be deferred until any third party files a claim in an ancillary proceeding[.]"); *see also Chaim v. United States*, --- F. Supp.2d ----, 2010 WL 767174, *8 & n.4 (D.N.J. Mar. 3, 2010) ("It is [ ] clear that once there is an indictment with a forfeiture allegation, an innocent third party . . . cannot then commence a Rule 41(g) proceeding.") (citing 21 U.S.C. § 853(k) and *United States v.*

---

[5]     *See United States v. Potes Ramirez*, 260 F.3d 1310, 1313 n.6 (11th Cir. 2001) (holding that a motion filed under Rule 41(e) (now Rule 41(g)) is a civil proceeding only when it is filed after the termination of criminal proceedings). The undersigned notes, however, that *Potes Ramirez* involved a Rule 41 motion brought by the criminal defendant, not a third party.

10

*Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005)); *see also United States v. Moser*, 586 F.3d 1089, 1094 (8th Cir. 2009) ("Federal Rule of Criminal Procedure 32.2(b)(2) and 21 U.S.C. § 853(k) preclude third-party claimants from actually intervening in underlying criminal cases."). Instead, Mr. Stone must await forfeiture proceedings and bring his claims pursuant to 21 U.S.C. § 853(n). *See* 21 U.S.C. § 853(k).

As the above conclusion suggests, the undersigned rejects Mr. Stone's argument that § 853(k) does not apply. Essentially, Mr. Stone asserts that his motion cannot violate § 853(k)(1) because no trial has been calendared and no appeal taken so he is not intervening in a trial or appeal. [Doc. 27 at 9]. Mr. Stone reads § 853(k)(1) too literally. Although the defendant's trial has not been calendared, the pre-trial proceedings that are currently ongoing are being undertaken to prepare the case for trial. Thus, a trial will be forthcoming absent a plea agreement accepted by the District Court. As a result, Mr. Stone's motion is essentially an attempt to intervene in the defendant's trial and criminal prosecution, which is prohibited by § 853(k)(1) since the firearms that Mr. Stone seeks to possess are subject to forfeiture. *See United States v. Patel*, No. 95-cr-190, 1996 WL 166949, *1 (N.D. Ill. Apr. 8, 1996) (concluding that § 853(k)(1) prohibited intervention in seeking return of van and money that was subject to forfeiture in an indictment where motion was filed pretrial); *cf. United States v.*

11

AO 72A
(Rev.8/8
2)

*Douglas*, 55 F.3d 584, 586 n.8 (11ᵗʰ Cir. 1995) ("Section 853(k)(1) similarly bars third-parties from intervening directly in the criminal forfeiture prosecution."); *United States v. Lavin*, 942 F.2d 177, 182 (3d Cir. 1991) (noting that § 853(k)(1) bars a third-party from intervening in the "true 'criminal case' ").

Because the firearms are the subject of a forfeiture provision in the defendant's indictment, the undersigned concludes that 21 U.S.C. § 835(k) precludes Mr. Stone from bringing his Rule 41(g) motion for return of property.[6] Accordingly, the undersigned **RECOMMENDS** that Mr. Stone's motion for return of property, [Doc. 11], be **DENIED**.[7]

     B.    *Motion for Recognition of Crime Victim Status, [Doc. 13]*

---

[6] Because the undersigned concludes that Mr. Stone's motion for return of property cannot be brought at this time, the undersigned declines to address the myriad of other arguments presented by the parties.

[7] When the parties presented oral arguments on the return of property issue, the undersigned indicated that he could issue an Order on Mr. Stone's Rule 41(g) motion for return of property. *See* T:23-24. Out of an abundance of caution, the undersigned issues his conclusion as a Report and Recommendation. *Cf. Simons v. United States*, 592 F.2d 251, 252 (5ᵗʰ Cir. 1979) (noting that Rule 41(e) (now Rule 41(g)) motion is a final order under 28 U.S.C. § 1291 only if the motion is for the return of property and is not tied to the criminal prosecution of the movant) (citing *DiBella v. United States*, 369 U.S. 121 (1962)).

AO 72A
(Rev.8/8
2)

Mr. Stone argues that he is a crime victim under 18 U.S.C. § 3771(e). [Doc. 13].

Mr. Stone asserts that the defendant's possession of his firearms has prevented the

firearms from being returned to him. "But for" the felon in possession charge,

Mr. Stone contends that the firearms would be returned to him. [*Id.* at 3]. Also, the

Movant asserts that the mere fact that the defendant has been charged with a status

offense should not result in a different conclusion because, citing to *United States v.*

*McElroy*, 353 Fed. Appx. 191 (11th Cir. 2009), the defendant's possession of the

firearms directly contributes to his continued victimization as a theft victim.[8] [*Id.* at 4].

The government responds by arguing that the defendant is not a crime victim

under § 3771(e). [Doc. 24]. The government argues that Mr. Stone was not directly

---

[8] The undersigned notes that possession of child pornography is not a status offense, so the Movant's reliance on *McElroy* to rebut the status offense argument is unpersuasive. A status offense is conduct that would normally be lawful except by virtue of the defendant's status. *See* Black's Law Dictionary (8th ed. 2004) ("A crime of which a person is guilty by being in a certain condition or of a specific character."). Thus, the defendant's status as a felon means that the otherwise lawful conduct of possessing firearms is unlawful for the defendant. However, possession of child pornography is not lawful under any circumstances. There are no exceptions based on an individual's status. As such the undersigned disagrees with Mr. Stone's assumption that possession of child pornography is a status offense. As for Mr. Stone's attempt to equate a child's victimization in a case involving child pornography possession with an individual's victimization in a case involving theft, the undersigned does not see the parallels because a theft victim is materially different from a child victim of child pornography.

13

and proximately harmed by the defendant's possession of the firearms because the connection between the defendant's possession and the Movant's loss of the firearms is too attenuated factually and temporally. [*Id.* at 9]. The government asserts that there is no evidence that Mr. Stone's loss would not have occurred but for the defendant's possession of the firearms. [*Id.* at 10]. Also, the government asserts that the chain of causation between the loss of Mr. Stone's firearms and the defendant's charged conduct of felon in possession is too attenuated because there is no evidence (1) connecting the defendant's conduct and the Movant, (2) showing how the defendant acquired the firearms, or (3) showing that others had acquired the firearms between the defendant's possession and the Movant's loss. [*Id.*]. Further, the government asserts that the act of stealing the firearms is an independent, intervening event that broke the chain of causation. [*Id.* at 11]. Finally, the government cites to three cases denying victim status that it believes are analogous to the instant case. [*Id.* at 12-16 (citing *In re Antrobus*, 519 F.3d 1123 (10th Cir. 2008); *In re Galvis*, 564 F.3d 170 (2d Cir. 2009); and *United States v. Sharp*, 463 F. Supp. 2d 556 (E.D. Va. 2006)].[9]

---

[9]     The undersigned agrees with Mr. Stone that these cases are not analogous because none are factually similar or analyze "crime victims" of status offenses such as the felon in possession offense at issue in this case in that they involve the offenses of: (1) conspiring to import cocaine and to launder money (*In re Galvis*); (2) selling a firearm to a minor (*In re Antrobus*); and (3) conspiring to distribute marijuana (*Sharp*).

14

AO 72A
(Rev.8/8
2)

Mr. Stone replies that the government misinterpreted his argument by suggesting that he attempted to achieve crime victim status because of the theft. [Doc. 28 at 2]. The movant reasserts that he is a crime victim of the defendant's felon-in-possession charge because the defendant's possession has led to the federal government's indefinite seizure of the firearms, which otherwise would have been returned by local authorities. [*Id.* at 2-3]. Mr. Stone argues that he has established the "but for" test because the defendant's possession charge has prevented him from taking possession of his property. [*Id.* at 3]. The Movant argues that "but for" the defendant's felon in possession charge, he would have been in possession of the firearms since June 2009, which is when the local authorities were ready to return them. [*Id.* at 7-8].

Under the Crime Victims' Rights Act ("CVRA"), a "crime victim" is "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e). Once an individual achieves crime victim status, "[t]he CVRA requires the Government to 'make [its] best efforts to see' that the court (in which the prosecution is pending) permits the victim to appear and be heard." *In re Stewart*, 552 F.3d 1285, 1286 (11th Cir. 2008) (quoting 18 U.S.C. § 3771(c)). The issue that the undersigned must resolve is whether Mr. Stone is a "crime victim" under the CVRA.

15

The Eleventh Circuit has established a two-part procedure for determining whether an individual is a "crime victim" under the CVRA. First, a court must "identify the behavior constituting 'commission of a Federal offense.' " *In re Stewart*, 552 F.3d at 1288. Second, a court must "identify the direct and proximate effects of that behavior on parties other than the United States." *Id.* "If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA." *Id.* The Eleventh Circuit also has clarified that the victim does not need to be identified in the indictment or to be an individual "whose identity constitutes an element of the offense." *Id.* at 1289. Instead, an individual "may qualify as a victim, even though [he] may not have been the target of the crime, as long as [he] suffers harm as a result of the crime's commission." *Id.*

Using the Eleventh Circuit's *In re Stewart* procedure, the undersigned concludes that Mr. Stone is not a crime victim under the CVRA. Each step of the procedure is discussed separately.

### 1. Behavior Constituting the Felon in Possession Offense

The elements of the felon in possession offense are as follows: (1) the defendant must be a felon, (2) the defendant must possess the firearm, and (3) the firearm must have traveled through interstate commerce. *See* 18 U.S.C.A. § 922(g)(1). Thus, the

16

relevant criminal behavior by the defendant for purposes of Mr. Stone's motion is the defendant's possession of the two firearms that Mr. Stone claims belong to him. *Cf. United States v. Jones*, --- F.3d ----, 2010 WL 1254351, \*7 (11th Cir. Apr. 2, 2010) ("[G]enerally, possession is a course of conduct[.]") (quoting *United States v. Rivera*, 77 F.3d 1348, 1351 (11th Cir. 1996)). With the first step of the *In re Stewart* procedure complete, the undersigned next turns to whether this possession caused Mr. Stone "direct and proximate harmful effects."

> ### 2. *Direct and Proximate Effects of Possessing the Firearms*

As stated above, the second step in the Eleventh Circuit's CVRA "crime victim" analysis is for courts to "identify the direct and proximate harmful effects of [the relevant felon in possession] behavior on [individuals] other than the United States." *In re Stewart*, 552 F.3d at 1288. The Eleventh Circuit did not define its "direct and proximate harmful effects" phrase. *See id.* However, this language clearly is derived from the CVRA's requirement that for an individual to be designated as a "crime victim," the individual must be "directly and proximately harmed as a result of the commission" of the criminal offense. *See* 18 U.S.C. § 3771(e). As a result, the undersigned concludes that the definition of "the direct and proximate harmful effects"

AO 72A
(Rev.8/8
2)

language from *In re Stewart* will be the same as the "directly and proximately harmed" language from the CVRA.

For assistance in defining the "directly and proximately" language, the undersigned turns to the Eleventh Circuit's treatment of similar language used to define "victim" under the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA")[10] and the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA").[11] The undersigned examines the VWPA and MVRA case law[12] because the VWPA and MVRA statutory definitions of "victim" are similar to the definition of "crime victim" under the CVRA, as other federal courts have noted. *See United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 462 (D.N.J. 2009). Given this

---

[10]   Under the VWPA, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663(a)(2).

[11]   Under the MVRA, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. § 3663A(a)(2).

[12]   As footnotes 10 and 11 *supra* demonstrate, the definition of "victim" under the VWPA and MVRA is the same. The Eleventh Circuit has acknowledged this equivalence and stated: "Because §§ 3663 and 3663A define 'victim' in precisely the same way, we look to cases interpreting either statute." *United States v. Dickerson*, 370 F.3d 1330, 1338 (11th Cir. 2004) (citing *United States v. Akande*, 200 F.3d 136, 140 (3d Cir. 1999)).

18

similarity, courts have found the interpretation of the "direct and proximate harm" language in the VWPA and MVRA to be "a helpful guide" for interpreting the "nearly identical language" in the CVRA. *United States v. Sharp*, 463 F. Supp. 2d 556, 561-62 (E.D. Va. 2006); *see also In re McNulty*, 597 F.3d 344, 350 n.6 (6th Cir. 2010) (noting that cases defining "victim" under VWPA and MVRA to be "persuasive," but "not binding on our interpretation of the CVRA" to determine whether an individual is a "crime victim" because "the definition differs under the statutes"). *But see In re Local #46 Metallic Lathers Union*, 568 F.3d 81, 85 n.2 (2d Cir. 2009) (declining to decide "whether the CVRA's definition of crime victim . . . is the same as the MVRA definition").[13] As a result, the undersigned turns to the Eleventh Circuit case law.

_____

[13] Although the definitions from these other statutes may be of some general assistance, the undersigned has found no cases that examine the issue confronting this Court, namely whether the owner of a firearm that was possessed by a defendant who was charged with being a felon in possession was a "victim" under the VWPA and MVRA. Instead, the undersigned has merely found cases in which courts determined that an individual was not a victim of the felon in possession offense based on distinguishing circumstances from this case, *e.g.*, the firearm that resulted in the felon in possession charge was used on the individual or used in the commission of a robbery. *See, e.g.*, *United States v. Santos*, 93 F.3d 761, 763-64 (11th Cir. 1996) (holding restitution for robbery where defendant was convicted of felon in possession was inappropriate); *United States v. Crow*, 256 Fed. Appx. 595, 596 (4th Cir. 2007) (holding restitution order not authorized under VWPA where individual was shot by firearm that was basis for felon in possession conviction); *United States v. Hawkins*, 232 F.3d 891 (Table), 2000 WL 1507436, *2 (4th Cir. Oct. 6, 2000) (finding individual not a victim who could recover restitution where defendant convicted of being felon in possession

The only published Eleventh Circuit case to provide a definition for the "directly and proximately" phrase is *United States v. Robertson*, which stated:

> We have never defined the phrase "directly and proximately," but we agree with the definitions that our sister circuits have adopted. "[T]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002) (internal quotation marks omitted). "Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th Cir. 2001) (citations omitted); *see also United States v. Donaby*, 349 F.3d 1046, 1054 (7th Cir. 2003) ("victim" under the Restitution Act harmed by "likely and foreseeable outcome of the crime"). Consistent with these definitions, we have affirmed that damage inflicted during the flight of a bank robber was harm that "directly and proximately" resulted from the commission of the bank robbery. [*United States v.*] *Washington*, 434 F.3d [1265] 1268-70 [(11th Cir. 2006)].

---

because the firearm that was the basis of the charge was only used to assault the individual).  Because these cases examined circumstances that are different than the instant case, they are not particularly helpful.  These cases are, however, notable in that they did not reject the possibility that there could be a victim of a status offense like the felon in possession offense.  Also, as the parties are aware, the Eleventh Circuit has declined to address the issue of whether individuals could be crime victims under the CVRA of a felon in possession offense, thereby keeping the issue open.  *See United States v. Duffy*, 315 Fed. Appx. 216, 218-19 & n.4 (11th Cir. 2009).

AO 72A
(Rev.8/8
2)

493 F.3d 1322, 1334 (11th Cir. 2007). From this block quote, the undersigned discerns two general principals in the definition of the "directly and proximately" phrase. First, an individual seeking "crime victim" status will have to show "but for" causation between the harm suffered and the federal offense, *i.e.*, the harm would not have occurred but for defendant's commission of the criminal offense. *See Robertson*, 493 F.3d at 1334. Second, the causal connection between the harm and the offense must be proximate, *i.e.*, there must be temporal proximity and factual proximity, meaning the harm was reasonably foreseeable and not too attenuated, and the intervening causal factors are related to the defendant's conduct. *See id.* at 1334-35; *see also United States v. Speakman*, 594 F.3d 1165, 1171 (10th Cir. 2010) (agreeing with other circuits and citing to *Robertson*, *supra*, that to show that an individual is a victim under the MVRA, the defendant's conduct must be the "but for" cause of the harm and the defendant must proximately cause the harm).

The undersigned concludes that Mr. Stone is not a "crime victim" under the CVRA. Initially, the undersigned finds that Mr. Stone has presented sufficient evidence to establish a *prima facie* showing of a possessory interest in the firearms at issue in this case. The government states that its records show that an Ann Marie Stone purchased the firearms found on the defendant. [*See* Doc. 25 at Exhs. 1A, 1B]. Mr.

AO 72A
(Rev.8/8
2)

Stone's wife has sworn that she is the woman identified in the government's documents as the original purchaser of the firearms and that she provided the firearms to Mr. Stone as a gift. (Ann Stone Decl. ¶¶ 2-3, 5 in Doc. 27). Mr. Stone also provides a sworn statement that the firearms are his. (Stone Decl. ¶ 3 in Doc. 11). This showing in the absence of any evidence to the contrary establishes a *prima facie* showing that Mr. Stone has a possessory interest in the firearms.

Although Mr. Stone has a possessory interest in the firearms possessed by the defendant while he was committing the felon in possession offense, there is no evidence that the effects of the harm suffered by Mr. Stone - - the loss of possession of his firearms - - was directly and proximately caused by the defendant's conduct of possessing the firearms. The direct cause of Mr. Stone's harm was the theft of the two firearms from his truck. That the defendant ultimately ended up in possession of the firearms does not alter the fact that the harm appears to have preceded the felon in possession offense. It is not clear that Mr. Stone would have been in possession of the firearms if the defendant had not possessed them because it is not clear that the defendant was responsible for the theft.[14] As a result, the undersigned concludes that

_____

[14]     If the defendant were responsible for the theft of the firearms, then the undersigned would reach a different conclusion because the theft and felon in possession offense would be intertwined, rendering the defendant's possession the

22

the theft, not the defendant's possession of the firearms, was the direct and proximate cause of the harm to Mr. Stone - - namely the loss of possession of the firearms. Mr. Stone is therefore not a crime victim of the defendant's felon in possession offense. In other words, the loss of the firearms did not occur because of the defendant's conduct of possessing the firearms, but instead the loss of the firearms "would not have occurred but for the conduct underlying" the theft. *See Robertson*, 493 F.3d at 1334 (quoting *Cutter*, 313 F.3d at 7).

As for Mr. Stone's argument that his firearms would have been returned to him but for the defendant's felon in possession charge, the undersigned is not persuaded. The harm - - Mr. Stone's loss of possession of the firearms - - was caused by the theft. His current lack of possession stems from the criminal prosecution of the defendant.[15] This prosecution is essentially an intervening event that severs connection between the harm from any criminal offense with the current harm to Mr. Stone. The CVRA's "crime victim" test requires direct and proximate harm from the criminal offense, which

_____

direct and proximate cause of Mr. Stone's harm.

[15] The Court recognizes that Mr. Stone's argument -that the defendant's possession of the firearms prevented Mr. Stone from possessing his firearms - has a certain allure. However, while the defendant's possession was a direct consequence of Mr. Stone's lack of possession, there is a lack of evidence that it was the proximate cause of Mr. Stone's lack of possession.

AO 72A
(Rev.8/8
2)

is different from the harm suffered from the criminal prosecution. Stated differently, the current inaccessibility of Mr. Stone's firearms stems from the government's conduct, not the defendant's possession conduct. As a result, Mr. Stone cannot be a "crime victim" as a result of the government's retention of the firearms for forfeiture and as evidence in the criminal case.

Accordingly, the undersigned **RECOMMENDS** that Mr. Stone's motion for recognition of crime victim status, [Doc. 13], be **DENIED**.

### *Conclusion*

For the reasons outlined in this Report and Recommendation, the undersigned **RECOMMENDS** that Mr. Stone's motion for return of property, [Doc. 11], be **DENIED**, and that Mr. Stone's motion for recognition of crime victim status, [Doc. 13], be **DENIED**.

**IT IS SO RECOMMENDED**, this the 12th day of April, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)